IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MAURICE B. PENNINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13cv662-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for supplemental security income benefits under Title XVI of the

Social Security Act,  42 U.S.C. § 1381 et seq., alleging that he was unable to work because

of a disability.  His application was denied at the initial administrative level.  The plaintiff

then requested and received a hearing before an Administrative Law Judge ("ALJ").

Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a

subsequent request for review.  The ALJ's decision consequently became the final decision

of the Commissioner of Social Security (Commissioner).[2]  *See Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3).  The parties have consented to the United States Magistrate Judge

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

conducting all proceedings in this case and ordering the entry of final judgment, pursuant to

28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in

this case and the briefs of the parties, the court concludes that the decision of the

Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[3] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)     Is the person presently unemployed?
> (2)     Is the person's impairment severe?
> (3)     Does the person's impairment meet or equal one of the specific
>         impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)     Is the person unable to perform his or her former occupation?
> (5)     Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th  Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute  . . . [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A.  Introduction**.  The plaintiff was 28 years old at the time of the hearing before the ALJ and has an 8th grade education.  The plaintiff's prior work experience is very limited but does include work as a restaurant dishwasher.  Following the telephonic administrative hearing at which the plaintiff waived counsel, the ALJ concluded that the plaintiff has severe impairments of anti-social personality disorder and cannabis dependence in remission.  At the hearing, the plaintiff also alleged a breathing/asthma impairment.[1]  Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform work.

**B.  Plaintiff's Claims**.  The claims as stated by the plaintiff are (1) the ALJ failed to properly evaluate and state the weight given to the opinions of Dr. Warren and Dr. Estock, the administration's own consultative examiners, and (2) the ALJ failed to properly consider plaintiff's breathing impairment pursuant to the Eleventh Circuit's "slight abnormality" standard.

### IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1)

---

[1]  The plaintiff alleged also that he was mentally retarded.  The ALJ found that allegation lacking in merit because it was not reported in his SSI application; there was no evidence that any mental deficiency arose before age 21; and this impairment was not alleged at the hearing. (R. 23)

objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3)

subjective evidence of pain and disability, e.g., the testimony of the claimant and his family

or friends; and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720

F.2d 1251 (11th Cir. 1983).  The ALJ must conscientiously probe into, inquire of and explore

all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v.*

*Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ must also state, with sufficient

specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a
> determination of disability and which is in whole or in part unfavorable to such
> individual *shall contain a statement of the case, in understandable language,*
> *setting forth a discussion of the evidence, and stating the Commissioner's*
> *determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).  Within this analytical framework, the court will

address the plaintiff's claims.

   **A.  The ALJ Properly Considered the Opinions of Drs. Warren and Estock.**  At

the behest of the Social Security Administration, Dr. Warren conducted a psychological

examination of Pennington in August 2010.  Dr. Warren concluded

> Maurice's ability to function independently is moderately impaired.  Presently,
> his ability to remember and carry out instructions, as well as respond
> appropriately to supervisors, coworkers, and work pressures in a work setting
> is moderately to severely impaired.

(R. 226)

   Dr. Estock, a State Agency medical consultant, completed a mental residual functional

capacity assessment form after reviewing Pennington's medical records.  On the summary

conclusion part of the form, Dr. Estock checked boxes labeled "markedly limited" in two

areas of social interaction: (1) the ability to accept instructions and respond appropriately to

criticism from supervisors, and (2) the ability to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes.  (R. 243)  At the hearing before the ALJ,

a vocational expert testified that a person with those impairments would not be able to

maintain work.  (R. 60)

On this basis, Pennington argues that he is disabled and that the ALJ erred because

he did not properly consider the opinions of Drs. Warren and Estock.  This contention is

incorrect for two reasons.  First, as aptly noted by the Commissioner, Dr. Estock's checking

of two markedly limited boxes in the summary conclusion section of the mental residual

functional capacity assessment form does not constitute his actual residual functional

assessment.  *See Land v. Comm'r of Soc. Sec.*, 494 Fed. Appx. 47, 49 (11th Cir. 2012).

Rather, Dr. Estock's opinion is encapsulated in the "functional capacity assessment" section

of the form.  (R. 244)  And in that section, Dr. Estock stated

> A.      Claimant could understand and remember simple instructions but not detailed ones.
>
> B.      Claimant could carry out simple instructions and sustain attention to simple tasks for extended periods. Claimant would benefit from a flexible schedule and would be expected to miss 1-2 days of work per month due to condition. Claimant would benefit from casual supervision. Claimant would function best with his own work area/station apart from others. Claimant could tolerate ordinary work pressures/Claimant would benefit from a familiar repetitive work routine but should avoid: excessive workloads, quick decision making, rapid changes, and multiple demands. Claimant would benefit from regular rest breaks and a slowed pace.

C.   Contact with the public should be limited. Feedback should be supportive. Feedback should be tactful and nonconfrontational. Contact with coworkers should be limited. Claimant would be expected to have occasional conflicts with coworkers.

D.   Claimant could adapt to infrequent, well explained changes. Claimant would need help with planning and goal setting.

(R. 244).

In his opinion, the ALJ recited these findings and stated, "My findings are in substantial agreement with those of Dr. Estock, the State Agency medical consultant who also determined that the claimant was not disabled." (R. 33) The ALJ also confirmed that he gave "significant weight" to Dr. Warren's opinion. (*Id.*) Thus, it is apparent that, contrary to Pennington's argument, the ALJ did consider the limitations found by both Drs. Warren and Estock in his residual functional capacity determination which is stated in full below.

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand and remember simple instructions but not detailed ones. The claimant can carry out simple instructions and sustain attention to simple tasks for extended periods. The claimant would benefit from a flexible schedule and would be expected to miss one to two days of work per month due to his condition. A flexible schedule means claimant would have some control over his day in terms of when job tasks would be performed during the day, and he would not be restricted to an assembly line, set-time type of job. The claimant would benefit from casual supervision. The claimant would function best with his own work area/station apart from others. The claimant can tolerate ordinary work pressures. The claimant would benefit from a familiar repetitive work routine but should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands. The claimant would benefit from regular rest breaks and a slowed pace. Contact with the public should be limited. Feedback should be supportive. Feedback should be tactful and nonconfrontational. Contact with co-workers should be limited. The claimant

would be expected to have occasional conflicts with co-workers. The claimant can adapt to infrequent, well-explained changes. The claimant would need help with planning and goal setting.

(R. 28)

**B.  The ALJ Properly Consider Plaintiff's Breathing Impairment.**  At step two of the sequential evaluation, the ALJ considered Pennington's alleged breathing impairment and concluded that it was not severe.  Pennington contends this was error because "the medical evidence of record in its totality demonstrates asthma to be a 'severe' impairment, thus, more than a "slight abnormality."  (Pl's Br., doc. # 12, at 6)  Here is what the ALJ said about Pennington's asthma.

> In the Disability Report - Adult, the claimant alleged that he was disabled because of asthma. Having considered the evidence, I find that this complaint is not supported by objective medical findings which demonstrate any impact on the ability to work, and thus, asthma is not a severe impairment.  The record reflects that the claimant presented to Southern Health Associates on September 28, 2006 with a history of asthma.  He had recently been released from prison after being incarcerated for three years.  On examination, he was in no acute distress.  There was wheezing in the left lung lobe.  Peak flow in the office was 340.  He was a smoker.  Dr. Todd B. Pearlstein's impression was asthma.  The claimant was started on Asmanex and Singulair.  He was instructed to use Albuterol on an as needed basis.  Dr. Pearlstein indicated that this would help his symptoms immensely (Exhibit 2F).
>
> The claimant presented to Southern Health Associates on December 29, 2006 with complaint of sore throat, cough and wheezing.  On examination, he was in no acute distress.  There was wheezing throughout the lungs. The claimant was given one Pulmicort and Albuterol nebulizer treatment in the office and his symptoms resolved almost completely (Exhibit 2F).
>
> Records from Healthcare Corrections show that an x-ray of the chest was performed and reviewed on June 26, 2007.  The claimant's lungs were clear.  There was no evidence of active cardiopulmonary disease (Exhibit 1F).

Records from Prison Health Services show that the claimant needed a new inhaler on July 6, 2007.  He had very mild wheezing bilaterally.  The claimant was assessed as having intermittent asthma on September 14, 2007.  His lungs were clear to auscultation bilaterally (Exhibit 1F).

Records from Fountain-Davis Correctional Facility show that an x-ray of the chest was performed and reviewed on January 24, 2008.  The claimant's lung fields were clear without infiltrate, mass, effusion, or pneumothorax.  Dr. Anne Glaser's impression was negative chest x- ray (Exhibit 1F).

Records from Correctional Medical Services show that the claimant's lungs were clear to auscultation bilaterally on February 12, 2008 (Exhibit 1F).

A health evaluation was conducted at Alabama Department of Corrections on September 17, 2009.   The claimant's lungs were clear to auscultation bilaterally (Exhibit 1F).

The claimant presented to Southern Health Associates on February 17, 2010 with asthma flare. He was out of medication.  He was a smoker.  He smoked one package of cigarettes each day. The claimant's asthma had previously been well controlled on no daily medication.  He had no history of hospitalizations.

On examination, he was in no acute distress.  Examination of the lungs showed that respiration rhythm and depth were normal.  His lungs were clear to auscultation.   There was no decrease in breath sounds.   There was no wheezing.  There were no rhonchi.  Dr. Pamela S. Trantham assessed asthma with acute exacerbation.  The claimant was strongly urged to discontinue smoking.  Dr. Trantham offered medicines to help the claimant stop smoking. The claimant declined (Exhibit 2F).

The claimant presented to Troy Medical Center Triage on April 22, 2010 in no acute distress with reports of cold, cough, and wheezing times one day.  The claimant alleged having a history of asthma.  The claimant's social history was positive for smoking.  The claimant denied having any pain.  On examination, his chest wall was non-tender.  He had audible expiratory wheeze.  He was diagnosed with shortness of breath, and asthma exacerbation.   He was prescribed albuterol ampules, atrovent ampules, and doxycycline.  Dr. Lenny Nasca indicated that the claimant could return to work/school (Exhibit 3F).

Dr. Richard Whitney, the State Agency medical consultant reviewed the documentary evidence at the initial level of the administrative review process. Dr. Whitney completed a physical summary on July 7, 2010 indicating that the claimant was alleging asthma. The claimant had no history of hospitalizations. He had no underlying pathology. In April 2010, he was in the emergency room with asthma (Exhibit 4F). Dr. Whitney's "02" rating is consistent with a finding of no severe asthma impairment.

Per his testimony, the claimant claimed that he could not work due to asthma. He described symptoms of shortness of breath and problems with asthma triggers, such as smoke, chemicals, and weather changes. He reported using oral medication, inhalers and nebulizers over the years to treat his asthma. The claimant testified that he required no emergency room visits in 2011 due to asthma. I actually see no emergency room visits since the application date in May 2010. The record shows one emergency room visit in April 2010, which was prior to filing; records indicate the claimant quickly responded to conservative treatment for asthma related shortness of breath.

Pursuant to Social Security Ruling 96-6p, I have considered and given substantial weight to the opinion of Dr. Whitney, the State Agency medical consultant, who found no severe physical impairment. This opinion is reasonably supported by the evidence available at that time, and supportive of the decision being rendered herein. The claimant's medically determinable physical impairment of asthma does not cause more than minimal limitations in the claimant's ability to perform basic work activities and is therefore non-severe. The record indicates that the claimant receives a good response to a conservative medication regimen.

(R. 24-25)

This lengthy recitation of the ALJ's consideration of the medical records demonstrates that he fully considered the evidence. His conclusion that Pennington's asthma was not severe is wholly consistent with the legal standard that an impairment "is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). In other words, merely because Pennington has asthma does not

mean it is severe.  Rather "the severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986).  The ALJ properly considered the effect of Pennington's asthma on his ability to work, and his conclusion that Pennington's asthma is not severe is supported by substantial evidence.

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence.  The court will enter a final judgment affirming the Commissioner's decision.

Done this 3rd day of February, 2015.


　　　　　　　　　　　　/s/Charles S. Coody
　　　　　　　　　　　　CHARLES S. COODY
　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE